UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| Petitioner, | ) | |
| V. | ) | CIVIL NO. 1:23-CV-69- |
| | ) | |
| **$382,622.19, More or Less,** | ) | |
| **from Guaranty Bank & Trust,** | ) | |
| **Account Number XXXX9697,** | ) | |
| | ) | |
| **$55,704.50, More or Less,** | ) | |
| **from Guaranty Bank & Trust,** | ) | |
| **Account Number XXXX9689,** | ) | |
| | ) | |
| **2017 Rolls Royce Dawn,** | ) | |
| **VIN: SCA666D51HU102887,** | ) | |
| | ) | |
| **2015 Triumph Bonneville,** | ) | |
| **VIN: SMT910K12FT666103,** | ) | |
| | ) | |
| **2020 Pavati 26' Pavati Wake Boat,** | ) | |
| **HIN: HIGW0061C920,** | ) | |
| | ) | |
| **2020 Pavati 26' Triple Axle Wake Boat Trailer,** | ) | |
| **VIN: 58LMB2634KA002223,** | ) | |
| | ) | |
| **$10,934.38, More or Less,** | ) | |
| **from Crosswater Yacht Club,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE**

Comes now Petitioner United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, FED. R. CIV. P., and respectfully states as follows:

1

# I.
# NATURE OF THIS ACTION

This action is brought by the United States of America seeking forfeiture to the United States of the following property:

1. $382,622.19, More or Less, from Guaranty Bank & Trust, Account Number XXXX9697;

2. $55,704.50, More or Less, from Guaranty Bank & Trust, Account Number XXXX9689;

3. 2017 Rolls Royce Dawn, VIN: SCA666D51HU102887;

4. 2015 Triumph Bonneville, VIN:  SMT910K12FT666103;

5. 2020 Pavati 26' Pavati Wake Boat, HIN: HIGW0061C920;

6. 2020 Pavati 26' Triple Axle Wake Boat Trailer, VIN: 58LMB2634KA002223; and

7. $10,934.38, More or Less, from Crosswater Yacht Club,

hereinafter the Respondent Property.

# II.
# JURISDICTION AND VENUE

Under Title 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under Title 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture.  This Court has *in rem* jurisdiction over the Respondent Property under Title 28 U.S.C. §§1355(b) and 1395.  Venue is proper in this district pursuant to Title 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to Title 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Respondent Property is found in this district.

## III.
## **STATUTORY BASIS FOR FORFEITURE**

This is a civil forfeiture action *in rem* brought against the Respondent Property for violations of Title 18 U.S.C. §§ 1343, 1344, 1349, 1956, & 1957 (wire fraud, bank fraud, conspiracy to commit wire and bank fraud, money laundering, and monetary transactions in property derived from specified unlawful activity), and subject to forfeiture to the United States of America pursuant to Title 18 U.S.C. § 981(a)(1)(A)/(C), which states:

**18 U.S.C. § 981. Civil Forfeiture**
**(a)(1)** The following property is subject to forfeiture to the United States:
**(A)** Any property, real or personal, involved in a transaction or attempted transaction in violation of section *1956, 1957* . . . of this title, or any property traceable to such property.
\* \* \*
**(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "*specified unlawful activity*" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

↓

**§ 1956. Laundering of monetary instruments**
\* \* \*
**(c)** As used in this section—
\* \* \*
**(7)** the term "*specified unlawful activity*" means—
**(A)** any act or activity constituting an offense listed in section *1961(1)* of this title . . . .

↓

**§ 1961. Definitions**
As used in this chapter—
**(1)** "racketeering activity" means . . . (B) any act which is indictable under any of the following provisions of *title 18, United States Code*: . . . section *1343 (relating to wire fraud), section 1344 (relating to financial institution fraud) . . . section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to the engaging in monetary transactions in property derived from specified unlawful activity)* . . . .

## IV.
## FACTS IN SUPPORT OF VIOLATIONS

1. On October 6, 2020, an Indictment (Doc. 23) was returned against Michael George McQuarn and other co-conspirators charging Title 18 U.S.C. §§ 1028A, 1343, 1344, 1349, & 1957 violations in A-20-CR-229-LY.

2. On February 23, 2022, McQuarn pled guilty pursuant to a written plea agreement (Doc. 101) to count one of the Indictment charging Title 18 U.S.C. § 1349 violations (conspiracy to commit wire and bank fraud).

3. As part of the plea, McQuarn agreed to forfeit his interest in the Respondent Property.

4. In his plea agreement, McQuarn agreed "not to contest the administrative, civil, and/or criminal forfeiture of the Subject Properties."

5. McQuarn further agreed that the factual basis of his plea agreement "are true and correct and establish a nexus between the Subject Properties and the Title 18 U.S.C. § 1349 violations, thereby also establishing that the Subject Properties are forfeitable."

6. Subsequently, the court entered a Preliminary Order (Doc. 139) forfeiting McQuarn's interest in the Respondent Property.

7. McQuarn passed away before sentencing and the forfeiture of the Respondent Property could be finalized (pursuant to FED. R. CRIM. P. 32.2(b)(4)(A)).

8. The facts from that criminal case form the basis for the instant complaint. Specifically, McQuarn knowingly combined and conspired with one or more other persons to commit the offenses of Wire Fraud, contrary to Title 18 U.S.C. § 1343, and Bank Fraud, contrary to Title 18 U.S.C. § 1344.

9. It was among the purposes and objects of the conspiracy to fraudulently obtaining loans under the Paycheck Protection Program (PPP) administered by the U.S. Small Business Administration (SBA).

10. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or about March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effect caused by the COVID-19 pandemic.

11. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

12. In or about April 2020, Congress authorized over $300 billion in additional PPP funding.

13. To obtain a PPP loan, a qualifying small business must submit a PPP loan application, which is signed by an authorized representative of the business.

14. The PPP loan application requires the small business applicant (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible for the PPP loan.

15. In the PPP loan application, the small business applicant (through its authorized representative) must state, among other things, (a) its average monthly payroll expenses; and (b) the number of its employees.

16. These figures are used to calculate the loan amount the small business is eligible to receive under the PPP.

17. In addition, the small business applicant must provide supporting documentation showing its payroll expenses.

18. A small business's PPP application is initially submitted to, and processed by a participating financial institution, then transmitted for further review to the Small Business Administration ("SBA") to assess the applicant's eligibility.

19. If the PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies.

20. By law, PPP loan proceeds must be used by the small business applicant for specified permissible expenses, namely, payroll expenses, mortgage interest payments, rent payments, and utilities expenses.

21. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the small business applicant spends the loan proceeds on the specified expenses within a particular period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

22. When submitting an SBA PPP application, the small business applicant is explicitly warned, and must affirmatively and explicitly acknowledge, that making a false statement in the application, and/or submitting false or fraudulent supporting documentation, is a violation of federal law.

23. McQuarn, a resident of Austin, Texas, worked with others, including his criminal co-defendants Huong Le directly and Demetrius Johnson indirectly, to draft the documents and supporting documents for the purpose of obtaining multiple SBA PPP loans.

24. The fraudulent documents and supporting documents, as McQuarn well knew, had multiple material false statements, including: fabricated payroll expenses; false and fraudulent representations regarding employees, including falsely stating the number of employees who allegedly worked for McQuarn's businesses; and false and fraudulent identification information

for alleged employees who were not employed by McQuarn and whose identification information had been stolen or misused.

25. McQuarn, while in the Western District of Texas, submitted, or caused the submission of, the following SBA PPP loan applications to the institutions described below, for the amounts below, on the dates below:

| Business Entity | Application Date | Financial Institution | Amount Requested |
|---|---|---|---|
| Vantastic Voyages | April 25, 2020 | Harvest Small Business Finance, LLC | $953,125.85 |
| Happy Days Movers, LLC | April 29, 2020 | TCF National Bank | $1,299.456.75 |
| Happy Days Movers, LLC | April 29, 2020 | Celtic Bank | $1,299,456.75 |
| Happy Days Movers, LLC | May 1, 2020 | Greater Nevada Credit Union | $1,299,456.75 |
| Happy Days Movers, LLC | May 1, 2020 | Customers Bank | $1,273,722.00 |
| Doc Z's Spectacles, LLC | May 5, 2020 | Celtic Bank | $443,732.00 |
| MGM Legacy Partners | May 9, 2020 | TCF National Bank | $1,815,241.92 |
| MGM Legacy Partners | May 9, 2020 | Northeast Bank | $1,704,258.40 |
| Cool Kids Entertainment Group, LLC | May 11, 2020 | Celtic Bank | $1,720,735.00 |
| MGM Legacy Partners | May 15, 2020 | Customers Bank | $1,720,985.00 |

26. McQuarn worked with Le and obtained and provided information used in the loan applications submitted by McQuarn.

27.     McQuarn also knew that Le was herself applying for fraudulent SBA PPP loans and assisted her in that process, including by providing fraudulent checks in support of the application.

28.     McQuarn directly, or by working with others, applied for multiple SBA PPP loans, as detailed in the criminal Indictment.

29.     Le worked with Johnson to apply for an SBA PPP loan for $956,310 in the name of another individual, K.S., for a business known as Keeping It Tasty.

30.     K.S., the owner of Keeping it Tasty, did not authorize an application for a PPP loan in that amount and that she did not supply the fraudulent information that was used by Le and Johnson in the Keeping It Tasty SBA PPP loan application.

31.     In fact, that fraudulent information used in that application came from Le and Johnson.

32.     Funds from that fraudulent Keeping it Tasty PPP loan were sent to a bank account under the control of McQuarn.

33.     In total, McQuarn, Le, Johnson, and other McQuarn associates submitted fraudulent loan applications seeking more than $23 million in SBA PPP loans.

34.     The loan applications were completed and transmitted using the internet and using interstate wire signals and transmissions sent between the State of Texas and other states.

35.     The funds were in the control of financial institutions.

36.     McQuarn conducted financial transactions with the proceeds of the fraud schemes, as detailed in the Indictment, including a May 21, 2020, $333,000.00 transaction from Greater Nevada Credit Union account ending in 9448 for the purchase of a 26 foot Pavati Wake Boat and

accompanying Wake Boat Trailer, and a May 28, 2020 transaction of $241,392.00 from Guaranty Bank & Trust account ending in 9697 for the purchase of a Rolls Royce Dawn motor vehicle.

37. McQuarn deposited at least $382,622.19 in proceeds from his fraud into Account Number XXXX9697 at Guaranty Bank &Trust.

38. McQuarn used Account Number XXXX9697 at Guaranty Bank &Trust to facilitate his fraud scheme.

39. Additionally, Account Number XXXX9697 at Guaranty Bank &Trust facilitated money laundering by promoting wire fraud, and McQuarn used the account to conceal the nature, source, location, or ownership of his fraud proceeds.

40. McQuarn deposited at least $55,704.50 in proceeds from his fraud into Account Number XXXX9689 at Guaranty Bank & Trust.

41. McQuarn used Account Number XXXX9689 at Guaranty Bank &Trust to facilitate his fraud scheme.

42. Additionally, Account Number XXXX9689 at Guaranty Bank &Trust facilitated money laundering by promoting wire fraud, and McQuarn used the account to conceal the nature, source, location, or ownership of his fraud proceeds.

43. McQuarn used fraud proceeds to pay off his loan on his 2015 Triumph Bonneville.

44. McQuarn used at least $10,934.38 in fraud proceeds to rent a boat slip and boat lift for a year at Crosswater Yacht Club.

45. McQuarn admits that he knowingly joined in a conspiracy to commit the offenses of Wire Fraud and Bank Fraud, that he shared information with others, including Le, who in turn was working with Johnson, in furtherance of the scheme to fraudulently obtain SBA PPP loan funds and defraud financial institutions and the United States Government, by means of false and

fraudulent pretenses, representations, and promises, and that she herself knowingly submitted documents containing fraudulent material statements and representations to financial institutions in support of obtaining SBA PPP loan funds.

46. On June 18, 2020, seizure warrant 1:20-MJ-535-AWA was served on Guaranty Bank & Trust for funds in account number XXXX9697, and on June 29, 2020, the IRS received a check from Guaranty Bank & Trust in the amount of $382,622.19.

47. On June 19, 2020, seizure warrant 1:20-MJ-542-AWA was served on Guaranty Bank & Trust for funds in account number XXXX9689, and on June 29, 2020, the IRS received a check from Guaranty Bank & Trust in the amount of $55,704.50.

48. On June 18, 2020, seizure warrant 1:20-MJ-532-AWA was executed, and the 2017 Rolls Royce Dawn was seized by IRS.

49. On June 18, 2020, search and seizure warrant 1:20-MJ-529-AWA was executed, and the 2015 Triumph Bonneville was seized by IRS.

50. On June 18, 2020, seizure warrant 1:20-MJ-533-AWA was executed, and the 2020 26' Pavati Wake Boat was seized by IRS.

51. On June 18, 2020, seizure warrant 1:20-MJ-534-AWA was executed, and the 2020 26' Wake Boat Trailer was seized by IRS.

52. On June 23, 2020, seizure warrant 1:20-MJ-550-AWA was served on Crosswater Yacht Club, and on July 3, 2020, the IRS received a check from Crosswater Yacht Club for $10,934.38.

These facts reasonably establish that the Respondent Property constitutes or derives from proceeds traceable to violations of Title 18 U.S.C. §§ 1343, 1344, 1349, property that facilitated those violations, and as property involved in money laundering pursuant to 18 U.S.C. §§ 1956 &

1957 and the Respondent Property is thereby subject to civil forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(A)/(C).

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Property, that due notice pursuant to Rule G(4) be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] and in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, FED. R. CIV. P., that the Respondent Property be forfeited to the United States of America, that the Property be disposed of in accordance with the law and for any such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By: /s/ Mark Tindall

Mark J. Tindall
Assistant United States Attorney
Asset Forfeiture Section
Texas State Bar No. 24071364
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
Phone: 512-916-5858
Fax:    512-916-5854
Email: mark.tindall@usdoj.gov

Attorneys for the United States of America

---

[1] Appendix A, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Property.

## VERIFICATION

Special Agent Jeff Terrell, declares and says that:

1. I am an Agent with the Internal Revenue Service, Criminal Investigation, assigned to the Houston Field Office, and I am the investigator responsible for the accuracy of the information provided in this litigation.

2. I have read the above Verified Complaint for Forfeiture and know: the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and the allegations contained in the Verified Complaint for Forfeiture are true based on information and belief.

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23, 2023.

Jeff Terrell, Special Agent
Internal Revenue Service,
Criminal Investigation